## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF TEXAS

TOMMY DRISKELL, individually and on
behalf of GENICE DRISKELL,

      Plaintiff,

vs.                                  **Civil Action No.: 2:25-cv-1122**

WINNIE-STOWELL HOSPITAL DISTRICT
D/B/A GOLDEN VILLA

      Defendant.

### COMPLAINT

AND NOW, comes the Plaintiff, TOMMY DRISKELL, on behalf of GENICE DRISKELL, by and through his undersigned counsel, Constance Mutong, Esquire and Jacob Runyon, Esquire, and the law firm of Smith Clinesmith, LLP, and files this Complaint for Defendant' violation of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"); the Federal Nursing Home Reform Act ("FNHRA"); 42 U.S.C. §1396r, *et al.*; and the implementing regulations found at 42 C.F.R. §483, *et al.*, against Defendant WINNIE STOWELL HOSPITAL DISTRICT d/b/a GOLDEN VILLA hereinafter referred to as "Defendant".

### Nature of Action

1.     This is a proceeding under 42 U.S.C. §1983 to remedy deprivations of rights under the Omnibus Budget Reconciliation Act of 1987; the Federal Nursing Home Reform Act; the Federal Nursing Home Regulations as found at 42 C.F.R. §483, which amplify the aforementioned statutes.

### Jurisdiction and Venue

2.     As the instant case presents issues of federal law, jurisdiction is proper in

this forum as a federal question, pursuant to 28 U.S.C §1331.

3.    Venue lies within this judicial district, since all of the actions complained of herein occurred within the Eastern District of Texas.

**Parties**

4.    Plaintiff TOMMY DRISKELL is an adult who resides at 22326 Tundra Rose Avenue, Unit B, Chugiak, AR 99567.

5.    TOMMY DRISKELL is the son of GENICE DRISKELL.

6.    Plaintiff brings this action on behalf of GENICE DRISKELL.

7.    Defendant is a hospital district with its offices located at 520 Broadway, Winnie, Texas 77665.

8.    Defendant, as a governmental agency, at all times relevant hereto, was acting under the color of state law.

9.    Defendant owns and operates Golden Villa ("Golden Villa"), which is a skilled nursing facility located at 1104 S. William Street, Atlanta, TX 75551.

10.    Defendant, in a governmental agency, can be served with process by serving the Texas Secretary of State, Service of Process – P.O. Box 12079, Austin, Texas 78711 as agent for services under Texas Civil Practice and Remedies Code § 17.044(a) because the Defendant does not maintain a designated agent of service of process for Texas.

11.    At all times relevant hereto, Defendant operated as a skilled nursing and rehabilitation facility.

12.    At all times relevant hereto, Defendant operated Golden Villa as a "skilled

nursing facility," as that term is defined in 42 U.S.C. §1395i-3.

13.     Defendant Winnie Stowell Hospital District is a county government organized and existing under the laws of the State of Texas. At all times relevant hereto, Defendant Winnie Stowell Hospital District, acting through Golden Villa, was responsible for the policies, practices, supervision, implementation, and conduct of all matters pertaining to Golden Villa and were responsible for the appointment, training, supervision, and conduct of all Golden Villa personnel. In addition, at all relevant times, Defendant Winnie Stowell Hospital District was responsible for enforcing the rules of the Golden Villa facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the State of Texas.

**Statement of Claims**

23.     All preceding paragraphs of this Complaint are incorporated herein, as if set more fully at length.

24.     From July 11, 2025, to September 13, 2024, Genice Driskell was a resident at Defendant's skilled nursing facility, Golden Villa, for the state purpose of "strengthening and endurance training."

25.     Upon admission, Ms. Driskell had multiple known co-morbidities, including but not limited to, iron deficiency anemia, hypothyroidism, chronic kidney disease stage 4, acquired absence of her right kidney, hypertension, and depression.

26.     Defendant knew of Ms. Driskell's pre-existing conditions and increased risk of foreseeable complications, including but not limited to, renal failure, pressure ulcers, and adverse effects from medication errors. Defendant represented to Ms. Driskell and her family that its facility was adequately staffed and equipped to meet her complex medical needs.

Plaintiff relied on these representations when choosing Golden Villa to care for Ms. Driskell.

27. Elderly residents with multiple chronic conditions, particularly severe kidney disease and anemia, are exceptionally vulnerable. They require vigilant monitoring, careful medication management, nutritional support, and assistance with daily activities to prevent rapid deterioration, falls, and the development of pressure wounds.

28. On July 15, 2024, Defendant developed a care plan for Ms. Driskell that acknowledged her conditions and the need to monitor for complications such as dehydration and skin breakdown.

29. Despite this, this, Defendant's staff failed to act on critical information. On July 17, 2024, "CRITICAL" lab results were received for Ms. Driskell. Defendant failed to take timely and appropriate action, and just two days later, on July 19, 2024, Ms. Driskell was hospitalized for acute renal failure. Hospital records noted that poor nutritional intake and volume depletion were the likely causes.

30. Upon Ms. Driskell's return to Golden Villa on July 23, 2024, Defendant's staff completed a fall risk assessment and identified her as a high risk for falls. On July 28, 2024, she was formally diagnosed with kidney failure.

31. During this time, Defendant's staff committed significant and repeated medication errors. Staff incorrectly documented a diagnosis of Type 2 Diabetes in Ms. Driskell's medical records and began administering insulin, even though Ms. Driskell was not diabetic.

32. Furthermore, Defendant's staff administered three times the prescribed dose of buspirone. Ms. Driskell was prescribed 5mg of buspirone per day, but facility records show she was administered 7.5mg twice per day (15mg total).

33.     Ms. Driskell's family repeatedly notified the facility staff of these dangerous medication errors, but the staff ignored their warnings and continued to improperly administer the medications.

34.     On August 12, 2024, facility staff noted Ms. Driskell's oral intake was only 25%. Three days later, on August 15, 2024, Ms. Driskell was found unresponsive with no vital signs. She was airlifted to Christus St. Michael Hospital. The treating physician informed the family that Ms. Driskell had suffered a cardiac arrest and was being overmedicated and improperly medicated.

35.     During this hospitalization, on August 16, 2024, a wound care evaluation revealed Ms. Driskell had developed a Stage I pressure wound on her sacrum. It was also documented that she had suffered a significant weight loss of 18 pounds, which constituted 8.8% of her total body weight.

36.     On September 1, 2024, Plaintiff Tommy Driskell again called Golden Villa to address the medication errors. He spoke with a nurse, Natasha, about the buspirone overdose and improper insulin administration. The nurse was dismissive and belligerent, yelling at Plaintiff for "telling her what to do."

37.     The injuries suffered by Ms. Driskell, including acute renal failure, cardiac arrest, the development of a pressure wound, significant weight loss, and her overall decline, were the direct and proximate result of Defendant Golden Villa's failure to provide proper medical and nursing care.

38.     As a direct result of the continuous substandard care, Ms. Driskell's health deteriorated rapidly during her residency at Golden Villa. She was discharged from Golden Villa on September 13, 2024.

39. During GENICE DRISKELL's residence at Golden Villa, Plaintiff relied on Defendant' representations, and it was their belief and understanding that Ms. Driskell was being properly cared for by all Defendantsoa at all times. However, based upon Defendant's negligence and other tortious misconduct as alleged herein, GENICE DRISKELL suffered substantial injury, pain, and suffering, for which Plaintiff now seeks damages.

**<u>Golden Villa's Profit from Understaffing and the Impact on Resident Care</u>**

37. Golden Villa gains much of its revenue and profit from taxpayer dollars by participating in federal and state-funded Medicare and Medicaid programs.

38. In the Medicare/Medicaid system, every nursing home resident is assigned an "acuity" level which reflects the number and severity of that resident's medical conditions and illnesses.

39. A resident with a higher acuity level places a greater demand for care and services on a nursing home and its staff.

40. Skilled nursing facilities, like Golden Villa, use acuity levels to bill Medicare/Medicaid for reimbursement of daily care and services.

41. Medicare/Medicaid reimburses nursing facilities at a higher rate for care and services based on each resident's acuity rate and number of therapy minutes provided to that resident.

42. Accordingly, the higher the facility's acuity levels, the more revenue the facility will generate from Medicare/Medicaid.

43. This creates a financial incentive for nursing homes, such as Golden Villa, to admit and keep residents with greater mental, physical, and psychological needs.

44. Every year, skilled nursing facilities (including Golden Villa) must submit a Medicare Cost Report to The Centers for Medicare and Medicaid Services ("CMS"), in which the facility must account for each dollar received and spent.

45. A resident's acuity level is used by CMS to determine the number of hours the nursing home is expected to provide each day to meet resident needs.

46. CMS then pays the facility according to the hourly rate of reimbursement for the expected number of nursing hours required for each resident.

47. At the end of each fiscal quarter, the nursing home must provide CMS with an accounting of the hours it actually spent providing nursing care to residents.

48. To calculate nursing hours, facilities, such as Golden Villa, add up the hours spent providing care to residents by Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and nursing aides.

49. Throughout the entire period of Ms. Driskell's residency, Golden Villa failed to provide sufficient and expected licensed care to its residents (i.e., care provided by RNs and LPNs) or expected aide care to its residents.

50. In 2021, 2022, 2023, and 2024, based on the acuity of its residents, Golden Villa provided fewer nursing hours to residents than the anticipated minimum staffing promulgated by CMS.

51. Managers, owners and operators of Golden Villa knew the facility was understaffed yet made no corrections to their budgeting to allow for additional needed staff to provide care to Ms. Driskell.

52.     As of November 11, 2025, Golden Villa is rated 1-stars out of 5 overall by CMS, with a 1-star rating for staffing levels and with roughly 24 minutes less of nurse staff hours per resident per day compared to the national average. Furthermore, while the national average of RN hours per resident per day is 41 minutes and the Texas average is 26 minutes, Golden Villa only provides 28 minutes of RN hours per resident per day per CMS data.[1]

53.     Generally, clinical studies have shown that understaffing in nursing homes has led to reductions in the quality of care provided to residents, such as Ms. Driskell.[2]

54.     For example, a 2023 study[3] examined the impact of understaffing (or staffing "instability") on the quality of care that is provided in skilled nursing facilities, such as Golden Villa.

55.     In particular, the study found elevated rates of understaffing of both LPNs and nursing aides (referred to as CNAs) is associated with worsened quality of care provided to residents.

56.     Specifically, the study found a statistically significant relationship between LPN/CNA understaffing and increased resident hospitalizations and emergency department visits.

57.     Skin breakdown, pressure wounds, and infections, like the ones Driskell suffered, are injuries which often require hospitalizations or emergency department visits.

---

[1] Information retrieved on November 11, 2025 from https://www.medicare.gov/care-compare/details/nursing-home/675490?id=9ccee7fb-f5c7-40ad-9e94-7a80de3e71f1&state=TX

[2] Harrington C, Edelman TS. Failure to Meet Nurse Staffing Standards: A Litigation Case Study of a Large US Nursing Home Chain. INQUIRY: The Journal of Health Care Organization, Provision, and Financing. 2018;55. doi:10.1177/0046958018788686

[3] Mukamel DB, Saliba D, Ladd H, Konetzka RT. Association of Staffing Instability With Quality of Nursing Home Care. JAMA Netw Open. 2023;6(1):e2250389. doi:10.1001/jamanetworkopen.2022.50389.

58.     Ms. Driskell required multiple emergency department visits and hospitalizations due to the poor care she received at Golden Villa.

59.     Here, Golden Villa provided below-average staffing to its residents, including Ms. Driskell, thereby contributing to adverse patient outcomes to its residents, including Ms. Driskell.[4]

60.     This below average staffing, per the literature analysis, leads to increased falls, malnutrition, and infections, and accordingly, at a minimum, increased the risk of Ms. Driskell, a known pressure wound and infection risk, of developing injuries related to pressure wounds and infections.

## COUNT I
## Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983

61.     All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

62.     At all times relevant to this Complaint, Golden Villa was acting under the color of state law and as an agent of the State of Texas.

63.     The Defendant are bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. §1396r. The Defendant are also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. §483, et seq., which served to further define and amplify specific statutory rights set forth in the above-mentioned statutes.

---

[4] Discovery is needed to show how Golden Villa's systematic understaffing specifically and individually impacted Ms. Driskell. Despite the need for this information, it is a well-studied fact (and, indeed, a logical conclusion) that understaffing leads to inadequate care for residents, like Ms. Driskell.

64.     The statutes in question, as amplified and further defined by the detailed regulatory provisions, create rights which are enforceable pursuant to 42 U.S.C. §1983 as decided by the United States Supreme Court in *Health and Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166 (2023), as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

65.     The Defendant in derogation of the above statutes and regulations, and as a custom  and policy, failed to comply with the aforementioned regulations as follows:

a.      By failing, as a custom and policy, to provide services with reasonable accommodations of the individual needs and preferences of residents, such as GENICE DRISKELL, as required by 42 U.S.C. §1396r(c)(1)(A)(v)(I);

b.      By failing, as a custom and policy, to allow patients such as GENICE DRISKELL to be to be fully informed in advance about care and treatment, to be fully informed in advance of any changes in care or treatment that may affect the resident's well-being, and to participate in planning care and treatment or changes in care and treatment as required by 42 U.S.C. §1396r(c)(1)(A)(i);

c.      By failing, as a custom and policy, to care for patients, including GENICE DRISKELL, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.10, 42 C.F.R. § 483.24, 42 U.S.C. § 1396r(c)(1)(A)(xi), and 42 U.S.C. § 1396r(b)(1)(A), as pled herein;

d.      By failing, as a custom and policy, to provide residents, including GENICE DRISKELL, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

e.      By failing, as a custom and policy, to periodically review and revise patients' or residents' written Care Plans, including GENICE DRISKELL, by an interdisciplinary team after each of the resident's or patient's assessments,

as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

f. By failing, as a custom and policy, to conduct an assessment of  patients or residents, including GENICE DRISKELL, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

g. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising patients' or residents', including GENICE DRISKELL's Care Plan, as required by 42 U.S.C. § 1396r(b)(3)(D);

h. By failing, as a custom and policy, to ensure that patients and/or residents, including GENICE DRISKELL, were provided medically related social services to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

i. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents, including GENICE DRISKELL, was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

j. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including GENICE DRISKELL, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

k. By failing, as a custom and policy, to ensure that Golden Villa was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including GENICE DRISKELL, to attain or maintain their highest practicable level of physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A), 42 U.S.C. § 1396r(d)(1)(A), and 42 U.S.C. § 1396r(d)(1)(C);

l.  By failing, as a custom and policy, to ensure that the administrator of Golden Villa met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

m.  By failing, as a custom and policy, to develop, implement, and maintain an effective training program for all new and existing staff, contractors, and volunteers, consistent with the individual's expected roles, as required by 42 C.F.R § 483.75 and 42 U.S.C. § 1396r(f)(2)(A)(i), as pled herein;

n.  By failing, as a custom and policy, to develop and implement written policies and procedures that prohibit the mistreatment, deliberate indifference, and abuse of residents such as GENICE DRISKELL, as required by 42 C.F.R. § 483.12 and 42 U.S.C. § 1396r(b)(1)(A);

o.  By failing, as a custom and policy, to provide nursing staff who are adequately trained and competent to provide nursing and related services to assure the safety and wellbeing of residents, including GENICE DRISKELL, as required by 42 C.F.R § 483.35, as pled herein;

p.  By failing, as a custom and policy, to ensure that Golden Villa was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including GENICE DRISKELL, and in operating such a facility as Golden Villa, as required by 42 U.S.C. § 1396r(d)(4)(A); and

q.  By failing, as a custom and policy, to ensure that Golden Villa's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including GENICE DRISKELL, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

66.  As a proximate result of Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, GENICE DRISKELL was injured as previously referenced, and suffered pain and distress as a result of Golden Villa's poor care and treatment, which allowed her to suffer harm as described herein. As such, GENICE DRISKELL has suffered, and is entitled to recover the following damages, as well as an award of reasonable

counsel fees, pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

a.   Pain, suffering, inconvenience, anxiety and nervousness of Genice Driskell;

b.   Hospital, medical, and nursing expenses incurred for Genice Driskell's care and treatment;

c.   Other losses and damages permitted by law; and,

d.   Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, TOMMY DRISKELL, individually and on behalf of GENICE DRISKELL, demands damages of the Defendant WINNIE STOWELL HOSPITAL DISTRICT d/b/a GOLDEN VILLA; Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

**SMITH CLINESMITH LLP**

BY: /s/Constance Mutong
Constance Mutong
State Bar No. 24104765
Jacob Runyon
State Bar No. 24083771
325 N. St. Paul Street, Suite 2775
Dallas, TX 75201
214-953-1900 Telephone
214-953-1901 Facsimile
txservice@fightingelderabuse.com
***ATTORNEYS FOR PLAINTIFF***